OPINION
Appellant Thomas Williams appeals from the decision of the trial court convicting him of attempted murder, having a weapon under disability, and resisting arrest and sentencing him accordingly. Williams assigns the following four errors for our review:
 I. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANTS MOTION FOR ACQUITTAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE BECAUSE THE EVIDENCE WHEN VIEWED IN A LIGHT MOST FAVORABLE TO THE STATE OF OHIO WAS INSUFFICIENT TO SUPPORT A CONVICTION ON COUNT FOUR OF THE INDICTMENT.
 II. APPELLANT'S CONVICTION ON COUNT FOUR WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT COMMITTED PLAIN ERROR IN FINDING APPELLANT GUILTY ON COUNT SIX FOR HAVING A WEAPON WHILE UNDER DISABILITY BECAUSE THERE WAS NO EVIDENCE THAT SUCH WEAPON WAS OPERABLE.
 IV. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO PROPERLY INSTRUCT THE JURY AS TO COUNT FOUR OF THE INDICTMENT THAT THE STATE OF OHIO HAD THE BURDEN OF PROVING BEYOND A REASONABLE DOUBT THAT APPELLANT [sic] ACTED WITH THE SPECIFIC INTENT TO KILL DAVID JONES IN VIOLATION OF OHIO REVISED CODE SECTION 2903.02.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On June 29, 1996, Thomas Williams appeared at David Jones' grandparents home yelling obscenities and demanding that Cynthia Love come outside. Love had appeared at the house to use the phone. Tammy Bailey, David Jones' mother, asked Williams to stop using such language at her parents' home. Williams refused and began to argue with Bailey, continuing to use profane language. David Jones then intervened by telling Williams not to talk to his mother in such fashion. Angered by David Jones' interference, Williams brandished a gun and pointed it at Jones' head. Williams pulled the trigger, but the gun did not fire. David Jones then ran into the next door neighbor's home for safety. Immediately thereafter, Williams pointed the gun at Bailey while she had her back turned to re-enter the house. Again, the gun did not fire when Williams pulled the trigger.
The police arrived, and Williams ran to his car and sped away across neighboring lawns. The police chased him, but lost him at a railroad crossing. Later the police received a tip that Williams was seen at Love's home. When the police arrived, Williams ran on foot. Again, the police chased him. This time the police captured him and arrested him. A gun was found seventy feet from where he was arrested.
The state indicted Williams on the following counts: failure to comply with an order or signal of a peace officer with two violence specifications; felonious assault with two violence specifications and a firearm specification for each count; attempted murder with a firearm, aggravated firearm, and violence specification for each count; and having a weapon while under disability with a violence, firearm, and aggravated firearm specification. Trial began on April 22, 1997.
Before trial commenced, defense counsel moved to sever the having a weapon while under disability count. He reasoned that "the inherent prejudice in the State being required to prove the element of [a] prior rape conviction would be patently harmful to Mr. Williams." (Tr. 45.) The trial court granted his motion. Thereafter, Williams signed a jury waiver, permitting the court to determine his guilt on count six.
At trial, Bailey testified she had never before seen Williams. She said that when Love first came in, she said someone was bothering her, and asked to use the telephone. When Williams pointed the gun at Jones, Bailey begged him not to shoot her son and to please leave. Bailey also testified that when David Jones ran away she turned to go back inside the house. She said she heard a click and turned around. When she turned around, Williams was standing directly behind her. On cross-examination, it was revealed that Bailey told the police she did not hear a click. The police report states that someone told her the gun clicked.
David Jones testified that he was outside washing his car when he noticed a male in a white car following Love as she walked down the street. Jones later identified the man as Williams. Jones said Love was yelling at the man to leave her alone. When Love entered the house to use the phone, Williams parked the car and began yelling for Love to come out of the house. Jones asked Williams several times to stop yelling and using profanity. When Jones told him to leave, Williams got really mad and pulled out a gun and pointed it at Jones. Jones said the gun clicked three times but did not fire, then he ran away to a neighbors house. Jones further testified that he saw Williams point the gun at the back of his mothers head. Jones also stated he had never before seen Williams.
Larry Szczepanski of the Garfield Heights Police Department testified that he received a dispatch call of a man with a gun on Alvin. He was only two blocks away at the time. Another officer, Grendzynski, also responded in the opposite direction. Officer Szczepanski saw Williams get into his car and drive toward him at a high rate of speed. Officer Szczepanski tried to block Williams path with his marked patrol car. At the last second, Williams veered off the road and drove across adjacent lawns. Officers Szczepanski and Grendzynski gave chase. Szczepanski testified that Williams drove recklessly during the chase. Williams lost the officers at a railroad crossing by driving around the lowered gate.
The police apprehended Williams later that day after receiving a tip as to his whereabouts. This time the officers chased Williams on foot. Officer Szczepanski was among those who arrested Williams. He testified he was also present when another officer located the gun Williams tossed during the chase. He said that upon finding the gun, he removed the bullets from the gun pursuant to safety procedures of the police department.
Capt. Thomas Kaiser is the range master for the Garfield Heights Police Department. Capt. Kaiser testified that he tested the firearm found at Williams' arrest. When he received the gun it was unloaded but it was accompanied by six live rounds. He described the gun as a .22 caliber revolver and the bullets were .22 caliber short.
Capt. Kaiser began the test using short bullets. He fired the gun six times. The gun misfired once. Capt. Kaiser reloaded the gun using long bullets. This time the gun fired all six times. Kaiser reloaded with four more long bullets and, again, the gun fired successfully each time.
Capt. Kaiser also testified he examined the bullets that accompanied the gun. He said none of them fired. They were all still whole. He further stated "five of them had actual marks on the primer from the firing pin." (Tr. 294). Finally, Capt. Kaiser testified that in his opinion the bullets failed to fire as a result of imperfect bullets rather than a malfunctioning weapon. On cross-examination, he stated he did not perform a tool mark test or a microscopic analysis. He also said he did not really know why the bullets did not fire.
Thereafter, the trial court instructed the jury. Neither side objected to the instructions. The jury found Williams not guilty on counts three and five, but guilty on counts one, two, and four. The court found him guilty on count six. The court rendered the following sentence:
 In Count1 [sic] you are sentenced to three to five years at the Lorain Correctional Institution. * * * The Court [sic] finds that Counts 2 and 4 do merge for purposes of sentencing, the sentencing will only be imposed with regard to Count 4, and the sentencing is 15 to 25 years plus three years on the gun specification, to be served prior to and consecutive with the sentence of the underlying offense.
 [On Count 6, you are] sentenced to 3 to 5 years * * * That case plus three years on the gun specification as well.
 The sentences that are imposed in Counts 1 and 6 will be concurrent, and concurrent with the sentencing imposed in Count 4 of 15 to 25 years, plus three years on the gun specification.
 So the aggregate sentence here handed by the Court [sic] for clarification is 18 to 25 years, and the court will order as well with the commitment papers, the order will accompany the Defendant for psychiatric treatment within the institution.
(Tr. 406-407)
This appeal now follows.
In his first assignment of error, Williams argues the trial court erroneously denied his Crim.R. 29 motion for acquittal. Williams asserts that the evidence presented at trial was insufficient to support a conviction of attempted murder.
When determining a sufficiency issue, the reviewing court must assess whether, if believed, the States evidence is against the defendant and would support a conviction. State v. Thompkins
(1997), 78 Ohio St.3d 380, 390. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, second paragraph of syllabus. Thus, if reasonable minds reach different conclusions as to whether each material element of a crime has been proven, the Crim.R. 29 motion for acquittal should be denied. State v. Apanovitch (1987), 33 Ohio St.3d 19.
Williams argues the State failed to prove the material element of attempt. Attempt is a specific intent crime. However, the intent to commit a crime does not itself constitute an attempt.State v. Dapice (1989), 57 Ohio App.3d 99. There must also exist a substantial step or an overt act in furtherance of committing the intended crime. Id. "A substantial step involves conduct which is "strongly corrobative of the actor's criminal purpose.'"Id.
Here, the evidence presented indicated Williams actions satisfied the elements of attempted murder. Williams pointed a gun directly at Jones in anger. Jones testified he heard the gun click three times. The expert testimony revealed five rounds were struck by the firing pin, but misfired. Based on this evidence, a logical inference can be made that Williams pulled the trigger while he pointed the gun at Jones. Reasonable minds can conclude from this inference that Williams act of pulling the trigger constituted a "substantial step" necessary for an attempted murder charge. Accordingly, we conclude the evidence presented sufficiently supports the conviction. Williams first assignment of error is overruled.
In his second assignment of error, Williams argues the conviction is against the manifest weight of the evidence. Again, he asserts the evidence does not indicate criminal attempt. Williams claims the States evidence merely speculates, rather than proved beyond a reasonable doubt, that he attempted to fire his weapon.
The standard of review for manifest weight of the evidence was set forth in State v. Thompkins (1997), 78 Ohio St.3d 380.
 [W]eight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a thirteenth juror and disagrees with the factfinder's resolution of the conflicting testimony. (Citations omitted.)
Id. at 387. Therefore, it is the duty of the appellate court to weigh all evidence and determine whether the evidence weighs heavily against the conviction. State v. Martin (1983), 20 Ohio App.3d 172,175.
In the present case, the evidence weighs heavily on the side of conviction. Bailey and Jones testified to the events that occurred. Both testified Williams trespassed onto their property. and angrily used profane language at them. Both testified he pointed a gun at Jones. Jones testified he heard the gun click three times. Finally, both identified Williams at trial as the perpetrator.
In addition, Officer Szczepanski testified he saw Williams leave the scene and chased him. Szczepanski was also one of the officers who arrested Williams later that day. And, he was present when Williams gun was found. Furthermore, Capt: Kaiser testified that five of the bullets from the gun had been struck by the firing pin. After weighing the evidence on record, we can only conclude the jury did not lose its way; the conviction is proper. Williams second assignment of error is overruled.
In his third assignment of error, Williams argues the trial court committed plain error when it ruled he was guilty of having a weapon while under disability. The basis of his argument is there was no evidence that he possessed an operable weapon.
The plain error doctrine must be taken "with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Weaver v. Coiwell Financial Corp., etal. (1992), 73 Ohio App.3d 139, [citing Schade v. Carnegie BodyCo. (1982), 70 Ohio St.2d 207, 209]. Plain error is only recognized where, but for the error, the result of trial would have clearly been different. See Breining v. Trimble (1995)107 Ohio App.3d 740.
Williams argues the gun was inoperable and that the State presented no evidence showing otherwise. The Ohio Supreme Court has held that "the state must present evidence beyond a reasonable doubt that a firearm was operable at the time of the offense [S]uch proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." State v. Murphy (1990), 49 Ohio St.3d 206, syllabus;State v. Thompkins (1997), 78 Ohio St.3d 380, 383.
In Murphy the defendant brandished a gun and explicitly threatened to kill someone. Here, Williams did not explicitly threaten to kill Jones. However, the Ohio Supreme Court held that evidence of an implicit threat to kill was sufficient to establish the operability of a gun used in the threat. State v.Thompkins, supra at 384. Williams aimed the gun at Jones and pulled the trigger intending to shoot him. Not only does such intent indicate Williams intended to kill Jones, it also shows Williams believed the gun was operable.
Furthermore, the definition of a firearm "includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). The gun in this case could have easily been made operable. Although the gun misfired when Williams aimed at Jones, the gun later fired successfully fifteen out of sixteen times when Capt. Kaiser tested it. Capt. Kaiser testified that it was his opinion that the faultiness at the time of the incident did not lay with the weapon, but with the bullets used. Based on the above, we conclude the trial court did not err. Williams third assignment of error is overruled.
In his fourth assignment of error, Williams argues the court committed plain error when it improperly instructed the jury on specific intent.
Based on our review of the record and our earlier stated conclusions, we find this assignment of error to be meritless. Furthermore, where the complaining party could have, but did not call the error to the trial courts attention, the appellate court does not have to consider such error. State ex rel. Quarto MiningCo. v. Foreman (1997), 79 Ohio St.3d 78. Accordingly, Williams fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendants conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
POPTEP, A.J. and
 ODONNELL, J. CONCUR.
PATRICIA ANN BLACKMON, JUDGE.